CHARLES RICHARDS and JOSEPH H. STRONG *against* NATHANIEL GILBERT, THEODORE BARRELL, JABEZ HUNTINGTON, JAMES LANMAN, BENJAMIN COIT, ISAAC STORY and JOHN M. TRUMBULL.

MOTION for a new trial.

This was an action of *assumpsit*, brought against the defendants, as common carriers. It was alleged in the declaration, that the defendants were owners of the sloop *Frances*, and were common carriers of goods, wares and merchandize, for hire, upon the river *Thames*, from *Norwich* to *New-London*; that on the 11th of *February*, 1812, the plaintiffs ship-

The owners of a vessel lying in the river *T.*, undertook, for hire, to carry certain goods from *N.* to *N. L.*, and there to deliver them in safety. In the passage, the river was obstructed by ice, which was formed during the night next preceding the sailing of the vessel from *N.*, whereby the vessel was injured and became leaky, and the goods were thereby spoiled. In an action of *assumpsit* brought upon the agreement, it was held, that the owners of the vessel were liable, as common carriers, for the damage sustained.

A common carrier, who undertakes to carry goods, for hire, is liable for all losses and injuries not arising from inevitable accident.

ped on board the *Frances*, then lying in the *Thames* at *Norwich*, nineteen tierces, containing a large quantity of clover-seed, the property of the plaintiffs, and of the value of 1400 dollars; that the defendants received the clover-seed, and in consideration thereof, and a certain freight and reward agreed to be paid to them by the plaintiffs, promised to carry the same safely and securely, from *Norwich* to *New-London*, and there safely deliver the same to the plaintiffs.

It was then averred, that the *Frances* sailed on the 12th of *February*, 1812; and that, by the insufficiency of the vessel, and the carelessness, negligence and unskilfulness of the master, the clover-seed received great injury; to the plaintiffs' damage 700 dollars, &c.

The cause was tried before the Superior Court, on the plea of *non assumpsit*.

On the trial, it was proved, that on the 11th of *February*, 1812, the plaintiffs put on board the *Frances*, the clover-seed, mentioned in the declaration; that on the day following, the vessel sailed from *Norwich* bound to *New-London*; and that during the passage, the river was obstructed with ice, which had been formed in the night next preceding the sailing of the vessel, by which, the hull of the vessel was cut, and became leaky, by which means, the damage complained of, was sustained.

The court, in their charge to the jury, instructed them, that the law was so, that the defendants were liable, as common carriers, for all losses and injuries, not arising from the act of God, and public enemies. The jury returned their verdict for the plaintiffs, accordingly.

The defendants moved for a new trial, on the ground of a misdirection; and the question of law arising upon the motion, was reserved for the advice of the nine Judges.

*Staples*, in support of the motion.

1. The custom relating to the duties and liabilities of common carriers, in *England*, has never been adopted in this State. This custom is entirely distinct from the common law of *England*, and constitutes no part of it. Originally, it

was applicable only to land carriers. As soon as this doctrine was applied to ship-owners, they became alarmed, and applied to Parliament for redress ; and the consequence was, that the usual exception in the bill of lading, was altered, in such manner, that ship-owners were exempted from all liability for losses on account of the dangers of the seas, as well as from the act of God, and the king's enemies. *Abbott*, 287.

In *England*, also, the carrier became the insurer of the goods. *Forward* v. *Pittard*, 1 *Term Rep.* 33. *Garside* v. The proprietors of the *Trent Navigation*, 4 *Term Rep.* 582. Will it be pretended, that our packet-masters are insurers of the goods they carry ?

In *England*, the rule applicable to common carriers, grew out of a different state of society from ours. It originated when the country was infested with robbers, and carriers were frequently connected with them. And besides, if a carrier should be robbed, the hundred would be liable to him, for the damages sustained. It is but recently, that this doctrine has been applied to ship-owners, in *England ;* and the application has been made under such limitations, as entirely to exclude the defendants from the operation of the rule.

By the rule in *Great-Britain*, a common carrier is obliged to carry goods. The doctrine, if adopted at all, must be adopted *in toto*. Our coasters have never been considered as bound to take goods.

2. The charge to the jury was incorrect. From the facts, as they appear in the motion, the court ought to have charged the jury, that the injury complained of, happened by the act of God, or, in other words, by inevitable accident. *Colt* and *Colt* v. *M'Mechen*, 6 *Johns. Rep.* 160.

*Goddard,* contra.

1. It is admitted, that in *England,* in a case like the present, the defendants would be liable to the payment of damages. *Coggs* v. *Barnard*, 2 Ld. *Raym.* 909. *Lane* v. *Cotton*, 1 *Salk.* 143. *Amies* v. *Stevens*, 1 *Stra.* 128. *Dale* v. *Hall*, 1 *Wils.* 281. *Forward* v. *Pittard*, 1 *Term Rep.* 27. *Abbot*, 257. 287. The same principle was adopted in the case of *Colt & Colt* v.

VOL. V.                    C c c

*M'Mechen,* 6 *Johns. Rep.* 160. This principle has also been recognised by our own courts. *Halsey* v. *Brown,* 3 *Day's Rep.* 346.

The custom of the realm is a part of the common law of *England ;* and that custom has been adopted in this country. In an action against a common carrier, it is unnecessary to allege the custom. The rule adopted in such cases, is founded upon public and general reasons. *Rich* v. *Kneeland, Hob. Rep.* 18. *Dale* v. *Hall,* 1 *Wils.* 281. *Golden* v. *Manning,* 3 *Wils.* 429.

2. The defendants were guilty of gross negligence. They voluntarily encountered dangers, from which loss would probably ensue ; and, therefore, were liable to the plaintiffs' demand. 2 *'Esp. Dig.* 246, 247. (*Gould's* edit.)

SMITH, J. There is no doubt of the correctness of the general principle advanced by the court below, in the charge to the jury. The only difficulty, in my judgment, arose from their not having proceeded to instruct them on the question, whether the immediate cause of the injury, was not of such a nature, in point of law, as to be considered as the act of God ? But the facts are not stated in the motion with sufficient fulness and precision, to present that point to the court : Nor do the parties appear to have contemplated the subject in this light, in drawing the motion. The court cannot, therefore, properly, discuss this question.

I am of opinion, that a new trial ought not to be advised.

The other Judges severally concurred.

New trial not to be granted.