WILLIAMS and others *against* GRANT and others.

*Hartford,*
June, 1816.

THIS was an action on the case against the defendants as common carriers. The declaration stated, that the defendants being owners of the sloop *M'Donough,* a vessel used by them in the business of transporting goods for hire, received on board 450 bushels of salt belonging to the plaintiffs, to be transported, for a certain sum *per bushel,* from *Providence* to *New-York,* and there delivered, the danger of the seas only excepted; and that while the sloop was proceeding down *Providence* river, by the negligence and unskilfulness of the master, and in consequence of his ignorance of the navigation of that river, she struck upon a rock and bilged, so that the plaintiffs' salt was ruined and lost.

The cause was tried at *Norwich, January* term 1816, before *Swift,* Ch. J. and *Brainard,* J.

On the trial, it was admitted, that the defendants undertook to transport the salt in question from *Providence* to *New-York,* on board a vessel of about twenty tons, owned by the defendants, for hire, as alleged in the declaration. The master gave the plaintiffs a bill of lading in the usual form, and containing the usual exception of the danger of the seas. While the vessel was on her passage, she run against a rock in *Providence* river, under a moderate breeze in fair weather, and bilged, so that the salt was lost. The plaintiffs contended, and produced witnesses to prove, that this rock, called *Sergeant's* rock, was well known to the people in the neighbourhood, and those concerned in the navigation of that river; that the vessel, when she run against it, was out of the usual course of navigation; that the master was not acquainted with the navigation of the river; and that it was usual to have a pilot, but that none was taken on board. The defendants, on their part, produced evidence to prove, that the rock was not generally known. The court charged the jury, that if they should find from the evidence, that the rock was generally known, the loss would be imputable to the negligence of the defendants, and they must return a verdict for the plaintiffs; but

A common carrier is liable, under a general acceptance, for all losses except such as are occasioned by the act of God, the act of the public enemies, or the act or default of the bailor himself.

The term 'act of God' comprehends all misfortunes and accidents arising from inevitable necessity, which human prudence could not foresee or prevent.

The striking of a vessel upon a rock not generally known, and not actually known to the master, is *prima facie* an act of God, for which the carrier is not responsible.

But though the situation of the rock was not generally known, and was not actually known to the master, yet if he ex-

posed the vessel to such accident by any culpable act or omission of his own, he is not excused.

*Hartford,*
June, 1816.

Williams
*v.*
Grant.

if they should find it was not generally known, then the loss was occasioned by a peril of the sea, and their verdict must be for the defendants. The jury found a verdict for the defendants ; and the plaintiffs moved for a new trial on the ground of a misdirection. The questions of law arising on this motion were reserved for the consideration and advice of the nine Judges.

*Cleaveland* and *T. S. Williams,* in support of the motion. The direction of the court to the jury makes the defendants' liability turn entirely upon the question of fact whether the rock was generally known. This was wrong, because a common carrier is in the nature of an *insurer.* Although the rock was unknown, so that no negligence was imputable to the master in running upon it ; yet as the weather was fair, and the vessel was entirely under his controul, the act of running upon the rock was his act, and not within the established exceptions of a carrier's liability. There is no such rule as that a carrier is to be liable only where negligence or misconduct is imputable to him. *Forward* v. *Pittard,* 1 *Term Rep.* 27. 33. *Trent Navigation* v. *Wood,* 3 *Esp. Rep.* 131, 2. In the case of a robbery, the carrier is subject to a force which he cannot resist ; but still he is liable. In *Barclay* v. *Heygena,* cited 1 *Term Rep.* 33. it was proved, that an irresistible force broke into the ship, and stole the goods ; yet the defendant was held answerable. In *Morse* v. *Sluce,* 1 *Vent.* 190. 238. S. C. *T. Raym.* 220. it appeared from a special verdict which was found, that *there was not the least negligence in the defendant ;* and yet by the opinion of the whole court, at the head of which was Chief Justice *Hale,* judgment was given for the plaintiff. It was part of the case of *Forward* v. *Pittard* that the goods were consumed by a fire, which broke out at the distance of 100 yards, and raged with unextinguishable violence, *without any negligence in the defendant.* The same doctrine is recognized in *Coggs* v. *Bernard,* 2 *Ld. Raym.* 918. *Gibbon* v. *Paynton & al.* 4 *Burr.* 2300. *Dale* v. *Hall,* 1 *Wils.* 282. *Hyde* v. *The Trent and Mersey Navigation Company,* 5 *Term Rep.* 394. *Elliot & al.* v. *Rossell & al.* 10 *Johns. Rep.* 1. 11. The rule is too well settled to require argument, or admit of doubt, that a carrier is liable for every accident, except by the act of God, or the public enemy. The act of God, in

its technical sense, means inevitable accident *not arising from the intervention of man.* 1 *Term Rep.* 33. 10 *Johns. Rep.* 11.

But if the case is to be decided on the ground of *negligence,* every loss is to be imputed to negligence which might have been avoided by human foresight. *Trent Navigation* v. *Wood,* 3 *Esp. Rep.* 131, 2. *Abbott on Shipping, part* 3. *c.* 4. *s.* 1. 8. *Colt* v. *M'Mechen,* 6 *Johns. Rep.* 168. per *Kent,* Ch. J. *Schieffelin & al.* v. *Harvey,* 6 *Johns. Rep.* 170. 177. *Elliot & al.* v. *Rossell & al.,* 10 *Johns. Rep.* 1. *M'Clure* v. *Hammond,* 1 *Bay* 98.

Another and stronger ground of our motion is, that the court omitted to give any direction to the jury on facts which were material. There being evidence which tended to prove that the vessel received her injury out of the usual course of navigation in the river, the court ought to have submitted the case to the jury on this point; because if the fact were proved, the defendants were liable, whatever might have been the *immediate* cause of the injury. If the master had kept the usual course, as he ought to have done, the accident would not have happened. *Abbott, part* 3. *c.* 3. *s.* 7. The evidence offered to shew that the master was unacquainted with the navigation of the river, and had no pilot, though it was customary to have one, was also material, and ought to have been submitted. If, under the circumstances of this case, there ought to have been a pilot of competent skill on board, it will avail the defendants nothing to shew that the accident did not happen from any want of skill in the master. *Law* v. *Hollingsworth,* 7 *Term Rep.* 160. *Bell* v. *Reed & al.* 4 *Binn.* 127.

The form of the bill of lading in this case makes no difference; for *dangers of the seas* and *the acts of God,* as applicable to this subject, are convertible terms. The exception in the bill of lading is, therefore, no other than that which the law makes in all cases.

Further, the exception of dangers of the *seas* is not applicable to *river* navigation. *Abbott, part* 3. *c.* 4. *s.* 5.

*Daggett,* contra. As this is an attempt to fix the defendants with a loss by a very rigid rule of law, the court will not be inclined to extend its application. In cases of theft and robbery, the carrier has been held liable, though without

negligence or blame; but these decisions have proceeded entirely upon the ground of public policy, *viz.* to prevent combinations with thieves and robbers. In the present case, there was no room for collusion; there is no reason, therefore, why the defendants should be responsible further than other bailees for hire.

But admitting the defendants to be responsible for all accidents, except by the act of God, or the enemies of the state; yet they are clearly within the first of these exceptions. In *Buller* v. *Fisher, Abbott, part* 3. *c.* 4. *s.* 5. where the ship in which the goods were conveyed, was run down in day-light, and not in a tempest, by one of two other ships that were sailing in an opposite direction to her, under such circumstances that no blame was imputable to the master of the defendant's ship; the loss was considered as having happened by *a peril of the sea,* and was held to fall within that exception. *Abbott* says, " If a ship is forced upon a rock or shallow by adverse winds or tempest, *or if the shallow was occasioned by a sudden and recent collection of sand in a place where ships could before sail in safety;* the loss is to be attributed to *the act of God,* or *the perils of the sea.*"(*a*) In *Amies* v. *Stevens,* 1 *Stra.* 128. and *Colt* v. *M·Mechen,* 6 *Johns. Rep.* 160. there was as much agency of man connected with the loss or damage, as in this case, and yet these cases were held to be within the exception. If the event be such as human prudence could not guard against, it is considered in law as *the act of God.* The charge of the court was therefore correct in resting the defendants' liability upon the fact of the rock's being generally known; for if it was, then the master could have avoided it; if it was not, the utmost skill and care would have been unavailing. The very case of goods lost or injured in consequence of the ship's sailing in fair weather, against a rock or shallow, is put by *Emerigon* and *Roccus:* and the master's liability is made to turn upon the fact of the rock or shallow being *generally known,* or *known to expert mariners.*(*b*)

As to the exception of *the dangers of the seas* in the bill of lading, it may be remarked, that the object of the parties

(*a*) *Part* 3. *c.* 4. *s.* 6, citing *Roccus,* not. 55. *Strac. de nautis,* part 3. num. 32.

(*b*) *Abbott, part* 3. *c.* 3. *s.* 9. and *c.* 4. *s.* 6. citing *Emerigon,* tom. 1. p. 373. *Roccus,* not. 55.

was evidently to *limit* the carrier's liability, and the court will give those words effect, if they can.

That the course of the vessel down the river was not the usual one, is an immaterial fact in this case. The rule of law as to a deviation in case of insurance, is inapplicable. A carrier takes goods at one place, and is to deliver them at another; but he may take what route he pleases. It is not shewn that the course taken was not as safe and as short as the usual one. A similar answer may be given to the other objections, *viz.* that the master was not acquainted with the navigation of the river, and that it was usual to have a pilot, but there was none on board. It is not shewn that the loss was occasioned by any ignorance of the master, or for want of a pilot. Nor does it appear that greater skill in the master, or the presence of a pilot, would have been of any use. It may be usual for a carrier to go in the day-time; but he goes in the night, and his vessel or his waggon is struck by lightning, and the goods destroyed; he is not liable, unless it be shewn that the loss happened in consequence of his departure from the usage.

SWIFT, Ch. J. Common carriers are liable for the loss of goods entrusted to their care, in all cases, except where the loss arises from the act of God, the enemies of the state, or the default of the party sending them. Under the term *act of God* are comprehended all misfortunes and accidents arising from inevitable necessity, which human prudence could not foresee or prevent; and in cases of this description, they may be liable for a loss arising from an inevitable necessity existing at the time of the loss, if they had been guilty of a previous negligence or misconduct, by which the loss may have been occasioned.

If the rock on which this vessel struck had been generally known, then it was the duty of the master to have known and avoided it, and the loss would be imputable to his negligence. If the situation of the rock was not generally known, and the master did not actually know it, then if he conducted properly in other respects, and no fault was imputable to him, his striking on the rock would be an act of God, an unavoidable accident, and he would not be liable for the loss. For, though the rock had been there for ages, yet if it had never been discovered before, it is the same thing as if it

*Hartford,*
June, 1816.

Williams
*v.*
Grant.

had been created and placed there immediately before the accident happened. The charge of the court to the jury on this point was correct.

In this case, however, the plaintiffs offered evidence to prove that the master was ignorant of the navigation ; that he had no pilot, as was customary ; and that the vessel went out of the usual course. It does not appear but that the running of the vessel on the rock may be attributed to this negligence. Of course, the court should have submitted these facts to the jury, and should have instructed them, that though the situation of the rock was not generally known, yet if they found the other facts to be true, so that the loss was imputable to the negligence of the master, then he was liable for it, and they must find a verdict for the plaintiffs.

For this reason I would advise a new trial.

In this opinion TRUMBULL, EDMOND, SMITH, BRAINARD, BALDWIN and HOSMER, Js. concurred.

GOULD, J. It is very clear, that a common carrier is liable, under a general acceptance, for all losses, except such as are occasioned by inevitable accident, the act of public enemies, or the act, or default, of the bailor himself. In the case now before the court, neither any act of public enemies, nor any act or default of the plaintiffs, is in question. With respect to the other ground of exemption, (inevitable accident,) the defendants are, indeed, by an express exception in the bill of lading, excused, so far as regards losses caused by " dangers of the sea." This exception, however, does not seem at all to qualify their liability : For, by " dangers of the sea," are meant no other than *inevitable* perils, or accidents, upon that element ; and by *such* perils or accidents, common carriers are *prima facie* excused, whether there is any such express exception or not. In either case, however, it is a condition precedent to their exoneration, that they should have been in no *default ;* or, in other words, that the goods of the bailor should not have been *exposed* to the peril, or accident, which occasioned the loss, by their own misconduct, neglect, or ignorance. For, though the immediate, or proximate, cause of a loss, in any given instance, may have been what is termed *the act of God,*

or inevitable accident; yet, if the carrier unnecessarily exposed the property to such accident, by any culpable act or omission of his own, he is not excused. I recollect a case put, in some book, to this effect: That if a common hoyman unnecessarily puts to sea, under circumstances which render a loss of the goods on board probable—as in very tempestuous weather—he is liable, in the event of a loss, though it were *immediately* occasioned by the elements, over which he had no controul. This I take to be law.

In the present case, the plaintiffs claimed, and attempted to prove, at the trial, that the master unnecessarily deviated from the ordinary course; that he was ignorant of the navigation of the river; and, that it was usual, in that navigation, to have a pilot—(whom he confessedly had not.) Now, such a deviation would certainly have been misconduct; the alleged ignorance of the master, (there being no pilot on board,) would have been a species of deficiency, in the nature of a want of sea-worthiness; and the want of a pilot, where one is, by common usage, employed, and the master ignorant of the navigation, is manifestly a culpable neglect. And, as the plaintiffs made it a ground of claim, that this misconduct, deficiency, and neglect, contributed to occasion the loss, by bringing the property on board within the reach of the peril; the existence of the facts, on which the claim was founded, should have been left to the jury, and the legal effect of them, upon the supposition of their existence, explained. As this was not done, the plaintiffs are, in my opinion, entitled to a new trial.

GODDARD, J. having been of counsel in the cause, gave no opinion.

New trial to be granted.