CROSBY and another *against* FITCH and another.

The owners of a vessel generally employed in the transportation of goods for hire, are liable, as common carriers, to the owners of the goods received for transportation.

The usual exception in a bill of lading of the " dangers of the seas," does not vary or qualify the liability of the ship-owners as common carriers.

If the master of a vessel, without reasonable necessity, depart from the usual route of vessels between the *termini* of the voyage, it is a deviation, of which freighters, as well as insurers, may take advantage.

Where it appeared that the usual route of vessels from *New-York to Norwich* in this state, was through *Long-Island Sound,* in *Summer* and *Winter;* in the *Winter* of 1836, the navigation of the *Sound* was obstructed by ice▸ for a longer period than usual ; and in *February,* during that period, a vessel bound from *New-York* to *Norwich* departed from such usual route, and performed her voyage in the open sea, on the *South* side of *Long-Island ;* it was held, that this was a deviation, without reasonable necessity, which rendered the ship-owners liable for a loss occasioned by dangers of the sea.

The question of deviation without reasonable necessity, is, upon given facts, a question of law, to be decided by the court.

It being established that the usual route for vessels bound from *New-York* to *Norwich,* is through *Long-Island Sound,* no usage for such vessels to perform their voyages on the *South* side of *Long-Island,* when the navigation of the *Sound* is obstructed by ice, will justify the master of a vessel bound from *New-York* to *Norwich,* during such obstruction, in taking the *South* side passage, instead of waiting in *New-York,* until the usual navigation becomes free, unless such usage is general, and of so long standing as to have become generally known.

Where the freighter, being informed of the course of the voyage taken, effected insurance on the goods shipped, and after a loss, demanded payment of the policy ; it was held, that neither such insurance, nor demand of payment, furnished any evidence of the consent or acquiescence of the freighter in the course of the voyage.

Although testimony may not have conduced to prove the fact for which it was admitted ; yet if that fact was one not controverted, a new trial will not be granted for the admission of such testimony.

THIS was an action on the case, to recover damages for the loss of 52 bales of cotton, belonging to the plaintiffs, shipped on board the sloop *Maria,* owned by the defendants, at *New-York,* to be transported thence to *Norwich,* in this state.

The cause was tried at *Hartford, September* term, 1837, before *Church,* J.

In the month of *February,* 1836, *Augustine Averill & Co.* of *New-York,* agents of the plaintiffs, delivered on board the sloop *Maria,* owned by the defendants, a quantity of cotton

*Hartford,*
*June, 1838.*

Crosby
*v.*
Fitch.

owned by the plaintiffs, to be transported from *New-York* to *Norwich ;* and *James Roath,* the master of the vessel, signed a bill of lading in the usual form, expressly excepting "the dangers of the seas." The plaintiffs claimed to have proved, that the usual route from *New-York* to *New London* and *Norwich,* was through *Long-Island Sound ;* that the master sailed from *New-York* with the sloop, having the cotton on board, and departed from such usual route, by going outside of *Long-Island* to the port of *New-London,* without any adequate or justifiable necessity; and that by means thereof, the sloop and cotton were exposed to a severe storm, while on the outside of *Long-Island ;* and thus the cotton was lost.

The defendants claimed to have proved, that sometime in the month of *January,* 1836, the navigation of *Long-Island Sound* was obstructed by ice, and so continued until about the 12th of *March* following, a period of forty days, so as to prevent the passage of vessels ; that the sloop *Maria* having lain in the port of *New-York* for some days previous to the 25th of *February,* 1836, sailed, at that time, upon her voyage; that it was then uncertain at what time the *Sound* would become navigable ; that the master of the vessel believed that it would not become so, for several days thereafter ; that the closing of the *Sound* by ice, for so long a period, was very unusual; that if the sloop and cargo had remained longer in the port of *New-York,* they would have been exposed to considerable loss and damage, from fire, thieves and other causes. Neither the master nor the owners of the sloop, however, were under any contract or obligation that the vessel should sail from the port of *New-York,* or arrive at any other port, at any particular time. The defendants also claimed to have proved, that at the time the vessel sailed, and for many years before, it was usual for vessels bound from *New-York* to *New-London, Norwich* and other ports *Eastwardly* therefrom, whenever the *Sound* was closed with ice, to perform the voyage on the outside of *Long-Island ;* that at the time this sloop sailed, there was no other route that could be pursued ; and that the master, in pursuing this route, acted in good faith, and according to his best judgment, and with a view to promote the interests of all concerned ; that in so doing, he acted with as much care, prudence and diligence as careful and prudent men bestow upon their own affairs ; that the cotton was necessarily thrown

*Hartford,*
*June, 1838.*

Crosby
*v.*
Fitch.

overboard, to save the vessel and crew, by reason of the perils of the sea, during a severe storm, without any fault or negligence on the part of the master or others. The plaintiffs did not deny, that at the time the vessel sailed, the navigation of the *Sound* was obstructed by ice, so that it was impracticable for her, then and for some days afterwards, to effect a passage through it to *New-London* or *Norwich ;* and it was proved, that the river *Thames*, during the whole time the *Sound* was so obstructed, was also obstructed between *New-London* and *Norwich*, so that the navigation of that river was then impracticable ; and also, that it was usually true, that the ice continued longer to obstruct the navigation of the *Thames* river than it did the head of *Long-Island Sound.*

But the plaintiffs claimed, that it was not necessary for the vessel to leave *New-York* until the *Sound* had become navigable. And they claimed to have proved, that a considerable portion of the cargo of the vessel belonged to the defendants, and had been put on board a few days before she sailed, to be carried to *New-London* or *Norwich ;* that it was not usual or customary for vessels bound from *New-York* to *New-London* and *Norwich* to perform the voyage upon the outside of *Long-Island*, when the navigation of the *Sound* was obstructed by ice, and that it never had been done, except in a very few instances, and never in so small a vessel as the *Maria ;* but that the general usage was, for vessels lying at *New-York*, bound to *New-London* or *Norwich*, or to ports further *East*, when the navigation of the *Sound* was obstructed by ice, to remain at *New-York*, until it became clear ; and that it was the duty of the master of the *Maria* so to have remained.

A few days before the vessel sailed, the master informed *Averill & Co.*, the plaintiffs' agents in *New-York*, that she would perform the voyage on the outside of *Long-Island.* *Averill & Co.*, without assenting thereto, immediately wrote to the plaintiffs, informing them of this determination of the master. The plaintiffs, as soon as they received this notice, which was on the 26th of *February*, 1836, the day after the sailing of the vessel, effected insurance at the office of the *Protection Insurance Company*, upon the cotton, on the voyage outside of *Long-Island*, to the amount of 2800 dollars, at a premium of $1\frac{1}{2}$ *per cent.* by a policy for the benefit of whom it might concern. After the loss, the plaintiffs called upon

*Hartford,*
June, 1838.

Crosby
*v.*
Fitch.

the *Protection Insurance Company,* and demanded payment; but it did not appear that any part of the loss had ever been paid by that Company. The defendants claimed, that the plaintiffs, by reason of such insurance, and by their making a claim upon the *Insurance Company* for the loss, had ratified and approved the conduct of the master in sailing on the outside of *Long-Island.*

The plaintiffs claimed, that the defendants having, as common carriers, received the cotton, for the purpose of transportation, were bound to proceed therewith, by the usual route, to the place of destination, without any unnecessary deviation; and that if the general usage was, for vessels bound from *New-York* to *New-London* and *Norwich,* when the navigation of the *Sound* was obstructed by ice, to remain in *New-York* until it became clear, the master, in the present instance, had no right to deviate from such route unnecessarily; and if he had done so, the plaintiffs were entitled to a verdict.

The defendants, on the other hand, claimed, that if, at the time the vessel left *New-York* with the cotton, the navigation of the *Sound* was so obstructed by ice as to render it impracticable for her to proceed through it to *New-London* or *Norwich;* and if there was a reasonable prospect that the *Sound* would not be open soon, so as to permit her to sail through it; the master had a right, at his discretion, if he acted *bona fide,* to proceed on his voyage on the outside of *Long-Island;* and especially, if other vessels under similar circumstances did so; and that it was not necessary, to justify the master in taking the outside passage, that the usage so to do, should be general or universal, under circumstances like the present, nor of long continuance; but that it was sufficient, if the usage had been so frequent as to induce a prudent and discreet man, acting in his own business, to believe it to be safe.

The plaintiffs having introduced the deposition of *Augustine Averill,* the defendants objected to so much of it as stated, that the deponent shipped said cotton on the declaration of the master to him, that he should sail as soon as the ice broke up in the *Sound.*—The court rejected this testimony for every purpose, except as it conduced to show the mutual understanding, at the time, between the master and *Averill,* that it was usual for vessels thus situated to remain in the port of *New-York* until the *Sound* broke up, as claimed by the plaintiffs.

For this purpose, and for this only, the court permitted it to be read. But such usage was very satisfactorily proved, by other testimony ; and that such had been the general usage, was not denied by the defendants.

The court charged the jury, 1. That the defendants being owners of the sloop *Maria,* were common carriers, and as such were liable for all losses or injuries, not occasioned by public enemies, the act of God, such as perils of the sea, or the act of the plaintiffs themselves : that if the cotton in question was thrown overboard and lost, in consequence of imminent danger, produced by a storm, to save the vessel and the lives of the crew, it was a loss by the act of God ; and in such case, the defendants would not be liable, unless such danger was encountered, or such perils produced, by reason of the un-seaworthiness of the vessel, the want of a proper number of able men to manage her, or some negligence or improper conduct of the master or owners.

2. That it was the duty of the master of the vessel to perform his voyage from *New-York* to *New-London,* by the usual and ordinary route ; and if, without a reasonable necessity, he neglected this duty, and adopted another and an unusual route, it was such misconduct on the part of the master as would subject the owners of the vessel for all losses sustained by reason thereof; and if the jury believed, that the master of the *Maria* departed from the usual route in pursuing his voyage, without reasonable necessity, as claimed by the plaintiffs ; or that the vessel was unseaworthy and not sufficiently manned for such a voyage, and that the loss of which the plaintiffs complained was occasioned thereby ; they ought to render a verdict for the plaintiffs ; and that the fact that *Long-Island Sound* was obstructed by ice, under the circumstances claimed by the defendants, did not constitute such necessity as would justify the master in prosecuting his voyage, by an unusual route, on the *South* side of *Long-Island,* unless a usage was proved to exist sufficient to justify it.

3. That no practice or usage for vessels bound from *New-York* to *New-London* and *Norwich,* and ports to the *Eastward,* to perform their voyage on the *South* side of *Long-Island,* when the *Sound* is frozen, and the navigation thereof obstructed, would justify the master in prosecuting his voyage in that manner, instead of waiting in *New-York* until the

navigation of the *Sound* became free, unless such usage was general, and of so long standing as to have become generally known. But if such usage was general, and well known, the master had a right and would be justified in prosecuting such voyage.

Hartford,
June, 1837.

Crosby
v.
Fitch.

4. That the fact that insurance had been effected upon the cotton in question, and that the plaintiffs had, before the commencement of this action, demanded payment of the Insurance office for the loss sustained, furnished no defence to this action.

The jury returned a verdict for the plaintiffs; and the defendants moved for a new trial.

*W. W. Ellsworth* and *T. Smith*, in support of the motion, after remarking that the plaintiffs' cotton being lost through *the perils of the seas,* which are expressly excepted in the bill of lading, the defendants are not liable, unless the master has been guilty of misconduct, contended, 1. That if carriers by water are subject to the responsibilities of common carriers by land, they are under no higher obligation; and no court would hold the latter liable for going round an insurmountable impediment (under circumstances analogous to those of the present case) merely because he could not show an usage to go round such impediment that was *well known. Story's Bail.* 323. *Elliott* v. *Rossell* & al. 10 *Johns. Rep.* 1. 7. *Trent Navigation* v. *Wood,* 3 *Esp.* 127.

2. That a common carrier may do whatever it is expedient to do, for the common benefit, irrespective of his character as such. 2 *Wheat. Sel. N. P.* 769.

3. That the true criterion of the liability of the owners to the freighters, where there is a loss by perils of the sea, and those perils are excepted, is, the liability of the master to the owners. In this case, would the master be liable to the owners, if the vessel had been lost, or to indemnify the defendants, if they are subjected in this suit? If the master can say to the owners, my conduct is justifiable, surely the owners can say to the freighters, we have not wantonly exposed your property. But can it be claimed, that the master would be liable to the owners, if there were nothing to urge against him, except that the practice to go outside the island, was *not generally known ?*

4. That to subject the defendants as common carriers, the

route adopted must not only be unusual, but *more danger-ous*; and the charge is incorrect for not submitting the comparative danger of the two routes to the jury.

5. That there are two grounds, upon which a common carrier can justify the adoption of a different route from the one commonly pursued : first, usage, under particular circumstances, by which the new route is made the usual route for the time being ; and secondly, necessity *ex justa causa.* The charge confounds this distinction, or rather merges the latter in the former. It is erroneous for not submitting the two grounds distinctly to the jury. *Pelly* v. *The Royal Exchange Assurance Company,* 1 *Burr.* 341. 350, 1.

6. That where the party relies on usage alone, the practice need not be *general,* to justify him in taking a new route : it is sufficient, if it be so frequent as to induce a prudent and discreet man, acting in his own business, to think it safe. Much less is it necessary that the practice should be so general as to become *well known.* This is not the case of a contract, in which words of peculiar or equivocal import are used, requiring the aid of usage to explain them ; but the question relates solely to the duty of the master, under the circumstances in which he was placed. Surely, if the practice had been sufficiently frequent to induce a prudent man to believe it was safe, it is not necessary that it should be general, much less, well known.

7. That where the party relies upon necessity *ex justa causa,* or a just and adequate reason, he is only bound to shew, that the master acted *bona fide,* according to his best judgment, and with a view to conduct his vessel, in a reasonable time, to her port of destination. He has a right, and it is his duty, to take into consideration the interests of *all concerned,* including even those of the owners of the vessel.

8. That the question whether there existed, in this case, a necessity or reason, sufficient to justify the conduct of the master, should have been submitted to the jury as a matter of *fact.* By the charge given, the great fact in controversy was taken from their consideration. *Patrick* v. *Ludlow,* 3 *Johns. Ca.* 10. 13. 15. *Suydam* & al. v. *The Marine Insurance Company,* 2 *Johns. Rep.* 148. 143. *Post* & al. v. *The Phoenix Insurance Company,* 10 *Johns. Rep.* 79. 83. *Graham* & al. v. *The Commercial Insurance Company,* 11 *Johns. Rep.* 352. *Mellish* & al. v. *Andrews,* 16 *East,* 312. 316. *Phil-*

*lips* v. *Headlam,* 2 *Barn. & Adol.* 380.   (22 *Serg. & Lowb.*
104.)

9. That the deposition of *Averill* was improperly received.
First, it did not conduce to prove the fact in controversy, *viz.*
that the usual practice was for vessels to stay in *New-York,*
when the *Sound* was frozen over.   Secondly, it was inadmis-
sible, if it did.   Usage must be proved, by witnesses to the fact.
The master's declaration out of court, that there was such an
usage, was mere *hearsay.*   It was not part of the *res gesta.*
Thirdly, the objection could not be removed, by a certificate
from the judge that the fact was otherwise proved.

10. That the plaintiffs having effected insurance on the
outside voyage, thereby sanctioned that route.   [Not much in-
sisted on.]

*Hungerford* and *T. C. Perkins,* contra, insisted, 1. That
the defendants being common carriers, were liable for losses of
property received by them as such, except losses arising from
the act of God, public enemies and of the owners of the pro-
perty.   2 *Kent's Com.* 597.   *Abbott on Shipp.* 253.

2. That it was the duty of the master, in this case, to per-
form the voyage in the usual and customary course; and if,
without reasonable necessity, he neglected so to do, and adopt-
ed an unusual route, the defendants are responsible for the loss
sustained.   *Davis* v. *Garrett,* 6 *Bing.* 716.   (19 *Serg. &
Lowb.* 212.)   3 *Chitt. Plead.* 367.—form of precedent.   *Trott*
v. *Wood,* 2 *Gallis.* 443.   1 *Marsh. Ins.* 184, 5.

3. That those causes only, which excuse a deviation as
against an insurer, will excuse as against the owners of the
vessel.   1 *Marsh. Ins.* 184.

4. That the facts in this case, as admitted, or as claimed by
the defendants, aside from usage, will not excuse a deviation.
*Park,* 299. *a.*   1 *Marsh. Ins.* 205.

5. That the usage, if any, to justify the master in taking the
outside passage, must have been a general usage, and of so
long standing as to have become generally known.   *Barber*
v. *Brace,* 3 *Conn. Rep.* 13.   *Lawrence* v. *The Stonington
Bank,* 6 *Conn. Rep.* 529.   *Smith* v. *Wright,* 1 *Caines,* 43.
*Trott* v. *Wood,* 2 *Gallis.* 443.   1 *Marsh. Ins.* 592, 3.

6. That upon a given state of facts, the question whether
there was a deviation, not justified by necessity or sufficient

reasons, was a question of *law,* proper to be decided by the court.    *Brown* v. *Betts,* 2 *Cowen,* 208.    *Newell* v. *Hoadley,* 8 *Conn. Rep.* 382.

7. That the acts of the defendants in effecting insurance and demanding payment of the policy, neither ratified the conduct of the master in taking the outside passage, nor was any evidence of an admission by the plaintiffs that such conduct was justifiable.    [The court stopped the counsel on this point.]

8. That *Averill's* deposition was properly admitted to prove the fact of usage.    But if otherwise, a new trial will not be granted ; for that fact was satisfactorily proved, by other testimony, and was not denied.

CHURCH, J.    1. The defendants have considered themselves as bailees for hire, and subject only to the responsibilities attachable to that character.    If they are right in this, then a question of care and diligence, under the circumstances of the case, was one which ought by the judge at the trial to have been submitted to the jury.    But if the defendants were common carriers, and liable for all losses not occasioned by the act of God, &c. then a very different question was to be settled.

We consider the defendants responsible in the latter character.    They were owners of the coasting vessel *Maria,* a vessel, as was conceded, generally engaged in the transportation of goods for hire ; and as such owners, the defendants, by their captain, received on board the cotton in question, to be transported from the port of *New-York* to *Norwich.*    That the defendants, as owners of this vessel, were common carriers, and as such, liable to all the responsibilities resulting from that employment, is well settled in the *American* courts; and in *England*, it was never disputed as a principle of mercantile law, although in that country, by stat. 26 *Geo.* 3. the liability of ship-owners has been modified.    2 *Kent's Com.* 465. *Story on Bailments,* 323.    *Richards* & al. v. *Gilbert,* 5 *Day,* 415.    *Williams* & al. v. *Grant,* 1 *Conn. Rep.* 487. *Colt* v. *McMechin,* 6 *Johns. Rep.* 159.    *Shieffelin* v. *Harvey,* 6 *Johns. Rep.* 170.    *Watkinson* v. *Laughton,* 8 *Johns. Rep.* 213.    *Stewart* v. *Russell,* 10 *Johns. Rep.* 1.    *Kemp* & al. v. *Coughtry,* 11 *Johns. Rep.* 107.    *McClure* v. *Hammond,* 1 *Bay,* 99.    *Bell* v. *Reed,* 4 *Binn.* 127.

In most of the cases here referred to, attempts were made to induce the courts to relax, what was called the severity of the common law rule on this subject; but we have found, in the commercial states of this *Union,* with perhaps the exception of *Louisiana,* but one case in which such an attempt was successful. In the case of *Aymar* v. *Astor,* 6 *Cowen,* 266. the supreme court of the state of *New-York* decided, that "the masters or owners of a vessel transporting goods on the high seas, are not common carriers; and in an action against them for loss or damage of goods, for any other cause than the act of God, &c. it should be submitted to the jury upon the evidence, whether they used ordinary care and diligence;" thus giving countenance to the claim of the defendants in the present case. Of this case the late Chancellor *Kent* says : " It has gone far to unsettle and reverse the former doctrine in the state of *New-York,* in respect to carriers by water." And again ; "I apprehend, with great deference, that the case of *Aymar* v. *Astor,* so far as it meant to decide, that masters of vessels are not liable as common carriers, is not to be taken for sound law." And Mr. Justice *Story,* referring to the same case says : " The decision is in direct repugnance to prior decisions made on the same point, in the same court."

We are not dissatisfied with the reasons which originated the common law responsibility of common carriers, and believe they apply, with peculiar force, at this day, and in this country, as it respects carriers by water, more especially ; upon which element a spirit of dangerous adventure has grown up, which disregards the safety, not of property merely, but of human life.

The bill of lading in evidence in this case, wherein the dangers of the seas are excepted, did not vary or qualify the liability of the defendants as common carriers. The act of God, inevitable accident, dangers of the sea, &c. are expressions of very similar legal import, and excuse a loss, whether they are repeated in a bill of lading or not. 3 *Kent's Com.* 171. *Williams* v. *Grant,* 1 *Conn. Rep.* 492.

We conclude, therefore, with the Judge at the trial, that the question was not one of care or prudence, but of misconduct or deviation on the part of the master or owners.

2. It was claimed by the defendants, that if the cotton was thrown overboard to save the vessel, and the lives of those on

*Hartford,*
*June, 1838.*

Crosby
*v.*
Fitch.

board, this was a loss by dangers of the seas, within the exception of the bill of lading, and not the consequence of the master's misconduct. If this were all, this claim of the defendants could not be resisted ; and so the jury were instructed. This raised the question of deviation, which the plaintiffs insisted the master had been guilty of ; for if there had been a deviation in the voyage from *New-York* to *New-London* and *Norwich,* by reason of which the storm was encountered, and the danger incurred, it was such misconduct as would subject the defendants, and deprive them of the justification which they would have had, if the same loss had been incurred in the prosecution of a voyage properly conducted.

There was a deviation, if the master, without reasonable necessity, either physical or moral, departed from the usual route of vessels between the ports of *New-York* and *New-London ;* and of such deviation freighters, as well as insurers, may take advantage. 3 *Kent's Com.* 165. *Williams* v. *Grant,* 1 *Conn. Rep.* 492. *Davis* v. *Garrett,* 6 *Bing.* 716. *Read* v. *Commercial Ins. Co.* 3 *Johns. Rep.* 348. *Urquhart* v. *Barnard,* 1 *Taun.* 456. *Hughes on Ins.* 197.

It was conceded in this case, and the fact is too notorious for dispute, that the usual track of vessels from *New-York* to *New-London,* and other *Eastern* ports, is, through *Long-Island Sound,* both *Summer* and *Winter.* Was the master, in the present instance, justified in departing from this route, and performing his voyage through the open sea, on the *South* side of *Long-Island,* in the month of *February ?* Was there any reasonable necessity for this ? We think there was not. The claim is, that the navigation of the *Sound* was obstructed by ice, and so continued longer than had been usual in former seasons. Still we see no necessity for the sailing of this vessel, while these obstructions continued. The obstruction was of such a nature, that the master and all concerned knew, that at a day not very remote, it must be removed. This was known, when the goods were placed on board. There was no contract which rendered it the duty of the master to sail by a given time, or to complete his voyage before a specified day. And if there had been, the freezing of the *Sound,* and the unusual continuance of the obstruction, was such an act of God as would probably have justified a longer stay in the port of departure.

*Hartford,*
June, 1838.
_____

Crosby
*v.*
Fitch.

The distinction is a very obvious one between the present case and one in which a vessel already on her voyage and *in transitu*, departs from the usual route, by reason of obstructions of this nature, or of blockades, &c. In such cases, the master must act; a necessity is thrown upon him; and if he is governed by a sound discretion, he stands justified. But here it may as well be claimed, that the master would be justified in leaving a safe port during the existence of a violent tempest, or in the face of blockading or embargo restrictions, because it might be uncertain how long these impediments would be in his way. The port of destination in this voyage was *Norwich ;* and it is conceded, that the obstruction caused by ice to the navigation of the river *Thames,* usually continues several days longer than the *Sound* continues frozen. The master knew, therefore, that he could not complete his voyage earlier in consequence of the course he adopted.

But it is said, that the danger from fire, thieves, &c. while lying in the port of *New-York,* created such a necessity of sailing as justified the master in taking the outside passage. It is true, that danger of this sort, to some extent, existed, and does always exist, in all ports ; and perhaps very nearly as much at one port as another—as much at *Norwich* and *New-London,* as at *New-York.* This pretended danger, certainly, could not be esteemed imminent or uncommon ; and could not justify any unusual or hazardous experiment. *Oliver* v. *Maryland Ins. Co.* 7 *Cranch,* 487. No fact appears, from which we can infer any necessity for the sailing of this vessel on the outside of *Long-Island ;* and by adopting that route, we think the master was guilty of a deviation.

It is claimed, to be sure, that this was a question of *fact ;* and as such, ought to have been submitted to the jury. We have ever supposed, that upon given facts, whether deviation or not, was a question of law ; and so we find it treated in all the cases. *Suydam* v. *Marine Ins. Co.* 2 *Johns. Rep.* 138. *Graham* v. *Commercial Ins. Co.,* 11 *Johns. Rep.* 352. *Brown* v. *Betts,* 9 *Cowen,* 208. *Newell* v. *Hoadly,* 8 *Conn. Rep.* 381.

3. Although it was not denied, that the general usage of vessels bound from *New-York* to *New-London* and *Eastern* ports, was, to sail through *Long-Island Sound,* as well in the *Winter* as at other seasons ; yet the defendants claimed,

that there was, to some extent, a practice for such vessels, when the *Sound* was obstructed by ice, to sail on the *South* side of the island; or at least, that the exceptions from the general usage were so frequent as that the master in the present case, could take the outside voyage, without being guilty of a deviation. On this point the jury were instructed, that no practice or usage for such vessels to perform their voyages on the *South* side of *Long-Island*, when the *Sound* is frozen, and the navigation for that reason obstructed, would justify the master in prosecuting his voyage on said *South* side, instead of waiting in *New-York* until the usual navigation became free, unless such usage was general, and of so long standing as to have become generally known.

If the question in the case had been one of care and prudence merely, perhaps such partial usage might have been material to show a want of gross negligence on the part of the master; but that was of no avail to show there had been no deviation. Freighters and insurers, in all their commercial transactions, are presumed to act and to contract in reference to known and general usage, and to submit to it; and such general usage may be well enough said to become a part of all their contracts. And if without consent, a partial practice is substituted as governing a voyage or other commercial operation, it operates as interposing a new contract, not agreed to by the parties, and perhaps as a fraud. Indeed, usage should not be regarded at all, unless it be of such a character as may be supposed to influence parties; and none can be ordinarily presumed to do this, but such as is public and continued. And therefore, it is not sufficient to prove a few instances, not amounting to general practice, as an excuse of what otherwise would have been a deviation. *Martin* v. *Delaware Ins. Co.* 2 *Wash. C. C. Rep.* 254. 1 *Condy's Marsh. on Ins.* 186. note. *Hughes on Ins.* 145. *Gabay* & al. v. *Lloyd*, 3 *Barn. & Cres*, 793. *Trott* v. *Wood*, 2 *Gallison*, 444. *Barber* v. *Brace*, 3 *Conn. Rep.* 10. *Lawrence* v. *Stonington Bank*, 6 *Conn. Rep.* 521. *Gibson* v. *Culver*, 17 *Wend.* 305.

4. Another consideration has been urged upon us, by the defendants, as furnishing a defence to this action. But we cannot listen to it.

The owners of this cotton, as soon as they were advised, by their correspondent in *New-York*, that the *Maria* had taken,

or would, without their consent, take the outside voyage, effected an insurance upon it, on such voyage, and after the loss, demanded payment of the underwriters. Whether there are any equitable circumstances, which, as between these parties, ought to induce the plaintiffs to resort to the underwriters for indemnity, we do not know. Certain it is, that the mere fact that an insurance has been effected upon goods, will not discharge carriers from their legal responsibilities to freighters. Neither the insurance, nor demand of payment, furnished any evidence of the consent or acquiescence of the plaintiffs in the voyage actually pursued. They had no reason to suppose it was contemplated until it was too late to interfere ; and then, they had a right to fortify themselves with as many means of indemnity, as they pleased, and resort, in the event, to any remedy they had, either against the ship-owners or the insurers.

5. The court believe, that such part of *Averill's* deposition as was objected to, did not conduce to prove the fact for which it was admitted ; and was, therefore, irrelevant in that respect. But as it was admitted only as conducing to show a general usage, which was not denied, it had no manner of effect in this particular ; and its admission furnishes no ground for a new trial.

We ought to remark, however, that we are not influenced in this opinion, by the statement in the motion, that the usage referred to was satisfactorily proved by other testimony ; for whether it was so or not, we are of opinion it was for the jury alone conclusively to decide. Such statements in motions for new trials, upon the authority of a similar one in the case of *Landon* v. *Humphrey,* 9 *Conn. Rep.* 209. have sometimes been made, and perhaps before the decision of that case ; yet upon more reflection, we are led to doubt the propriety of this practice ; and decide not to regard it in future.

We do not advise a new trial.

In this opinion the other Judges concurred.

New trial not to be granted.