## Case No. 10,162.

### The NEW JERSEY.

[Olc. 444.] [1]

District Court, S. D. New York. Oct., 1846.

COLLISION — MEASURE OF DAMAGES — IMPAIRMENT OF VALUE OF VESSEL INJURED—COSTS.

1. In the valuation of damages caused by a collision, the owner of the injured vessel is entitled to be recompensed to the amount of his entire loss.

2. When the value of the vessel injured is only impaired, the measure of damages will be the sum required to reinstate her to the condition she was in at the time of collision; if she is a total loss, her market price or value at the time will be the criterion.

[Cited in The Baltimore, 8 Wall. (75 U. S.) 386.]

3. The colliding vessel cannot diminish the allowance of her market value by proving her actual worth to be less, because of her age, imperfect build or the state of her timbers.

4. A common carrier by water is not liable for the loss of cargo by collision at sea; but if a commissioner reports damages for that cause, an exception will not lie to the report to try the legality of the decision, it being a question on the merits.

5. Relief must be had by motion to vacate the report as not within the scope of the order of reference; or for a rehearing before the court on the merits.

6. When seven exceptions are filed to a commissioner's report, and six are sustained by the court. costs will be allowed therefor, to be deducted from the amount decreed to the libellant.

A decree having been rendered in this cause that the libellant recover against the steamboat New Jersey the damages sustained by the sloop Hamlet, and the cargo on board, it was referred to a commissioner of the court to ascertain and compute the amount of such damages [Case No. 10,161], and having heard the evidence submitted and the arguments of counsel, he reported that he found the sloop at the time of the collision was worth three thousand dollars, and the cargo was worth five hundred and twenty-eight dollars. Upon the coming in of the report exceptions were filed to it by the claimants, on the following grounds: 1st. That the value of the sloop reported by the commissioner was above her real worth. 2d. That the commissioner had given undue weight to the opinions of witnesses as to such value, and had not determined it by the facts. 3d, 4th and 5th. That in appraising her value he had not

made proper deductions, because of her age, unsoundness and other defects. 6th. The commissioner has allowed a greater amount than it would have cost to have raised the sloop, put her on the ways and repaired her. 7th. That the commissioner allowed the owner of the vessel $528.35 for the cargo on board, which did not belong to him; that the sum, also, was more than its value; that the amount of freight should have been deducted from the value of the cargo.

C. Van Santvord, for claimants.
E. Burr and E. C. Benedict, for libellant.

BETTS, District Judge. Twenty witnesses were examined before the commissioner in relation to the value of the Hamlet, and their testimony has been reported in full to the court. On examining it carefully, I am satisfied the commissioner has not over estimated the value of the vessel at the time of the collision. The owner is entitled to have the vessel estimated at its market value at the time of her destruction. His loss is the price it would produce on sale. The claimants cannot overcome that evidence by proving the vessel worth, intrinsically, less money, because of her insufficient build, her old age, or the actual state of her timbers. These considerations are of weight on an appraisement of a vessel, but they afford no certain criterion of her market price. The evidence of the claimants does not show she was apparently below the value of craft of her class and age.

There is no right of abandonment to the owner of a colliding vessel because of any injury, less than a total loss by collision. The damages arising from collisions are compensated at the amount of actual loss sustained by the injured vessel. The Amiable Nancy, 3 Wheat. [16 U. S.] 546. Accordingly. if the injured vessel is left in existence, and in possession of her owner, he must prove the amount of his loss over and above what remains to him. He is to be indemnified the expense of replacing her in the condition she was when the injury was received. Abb. Shipp. 300. The collision, in this case, occurred in October, 1845. The sloop lay under water at the place until June, 1846, when she was raised, at an expense of $500 to the owner, and could have been placed on the ways ready for repairs for $25 more. The cost of repairing her was then carefully estimated, and it is proved she could then have been repaired and placed in as good a condition as at the time of the collision, including new sails, for a sum not exceeding $1,350. To this would be added the expense of raising her, and placing her on the ways ready for repairs, $525, the whole being $1,875. Nothing was, however, done with her, and she was suffered to remain under water until September, when other ship-wrights, who examined her, proved her hull was not worth repairing; one valued it at $250, and two

testified that it would not pay the cost of breaking up for fire-wood. The first survey and examination of the sloop was careful and thorough, and affords more satisfactory evidence of her true condition than the opinions of those who subsequently looked at her cursorily only, and after she had been three months under water.

The libellant does not prove that he tendered the wreck to the steamboat, or demanded the means of repairing her, and accordingly it must be assumed that his claim of damages had relation to her condition at the time. The damages, then, which he can rightfully recover, must be limited to what would have restored her to the condition she was in when injured, adding a proper allowance for loss of her services during the time reasonably required for her reparation. No evidence was taken by the commissioner showing how long a time would have been necessary to repair her after she was raised, nor what would be a fair compensation for that loss of time. The allowance for loss of the services of the vessel should not commence prior to the efforts put on foot to raise her. No proof is given showing that the work could not have been done as well in November as May and June, and the owner ought not, therefore, to be allowed against the steamboat any time he voluntarily lost in regaining his vessel.

As the testimony stands, therefore, I am of opinion that the libellant is only entitled to recover $1,875 for the injury to the Hamlet. He may, however, upon proper application, obtain leave to go again before the commissioner to establish more distinctly this class of claims. I accordingly so far allow the six first exceptions to the commissioner's report as to deduct $925 from the value of the vessel reported, and order that the libellant recover therefor $1,875.

The seventh exception is to the allowance of $528.25 for the cargo on board; and the material question under that exception relates to the competency of the owner of the vessel to sue in his own name for that loss. The owner of a vessel is not liable for the loss of goods shipped on board his vessel, occasioned by a collision at sea, where no blame is imputable to him (Story, Bailm. § 512; Id. §§ 514, 518, and cases there collected), and when by the bill of lading the perils of the sea are excepted (Abb. Shipp. pp. 472, 473). It is held that such exemption is implied in all cases of carriage by water. Gould, J., 1 Conn. 487, and 12 Conn. 410; 1 Nott & McC. 170. And it would seem that usages of the particular place or business is made of important weight in determining the liability of water carriers. 3 Kent. Comm. 217. Without proof, then, that the libellant had paid for the cargo, or made himself liable for it, and thus become equitably assignee of the owner's right, this objection ought probably to have prevailed if made on the hearing upon the merits. But it is too late to raise the question on exceptions to the report of a commissioner. The authority of that officer extended no further than to consider and decide points of fact and evidence, and an exception to his report does not bring in review issues upon the merits. The remedy of the claimants would be by motion to reject the report, as not within the provision of the order of reference, or to allow a re-hearing on the merits. This exception is accordingly overruled. The claimants may be protected against the hazard of an after suit by the owner of the cargo, on application to the court to stay this portion of the recovery in court until the release of the claimants is filed by the owner of the cargo.

The libellant will recover $2,403.35 with his costs to be taxed, deducting therefrom the taxed costs of the claimants upon the six first exceptions to the commissioner's report, which are decided in his favor.