By the Court. Campbell, J.
The plaintiff, a merchant in Ohio, purchased in the city of Hew York a quantity of merchandise, which the defendant undertook to forward to Fairport in Ohio. The agreement was in the following words “ Hew York, August 28,1845. I hereby agree to forward the goods *611 of Mr. A. Wilcox from New York to Eairport for fifty-five (55) cents by vessel, and sixty-five (65) cents per 100 lbs. by steam, to the close of the present season'. Those goods marked 6 steam ’ to go by steam. All other goods to be shipped by vessel from Buffalo.” The goods in question were purchased in the fall of that year, and were sent forward from Buffalo in a sailing vessel, and were lost in a gale on Lake Erie. On the corner of the letter sheet in which the contract was written, was the defendant’s printed card, headed “ Canal and Lake Transportation,” “ American Transportation Co.” and, on the trial, it appeared, that the defendant was the proprietor of the American Transportation Company, and that it was a line of boats running from Albany to Buffalo, and had no vessels on Lake Erie; and he insisted in his defence, that he was a common carrier only on the canal, and that beyond Buffalo he was but a forwarder, and was not, therefore, liable for losses which occurred on the lakes.
The judge charged the jury, that the defendant, by the terms of the contract, was constituted in law a common carrier from New York to Eairport, and that the only question for their determination was, whether the goods were marked to go by steam; that if they were so marked, the plaintiff was entited to a verdict, and, if not so marked, then the defendant was entitled to recover. The jury found for the plaintiff, and, so far as the testimony is presented, we think they were entirely justified in finding that the goods were marked to go by steam.
In Muschamp v. Lancaster Railway Co., (8 Mees. & Wels. 421,) the facts were these:—A parcel was booked at the office of the defendants, to be carried to a point beyond the terminus of their line, and was lost after it left the defendants’ line. The price of carriage for the whole distance was offered to be paid to the defendants at the time the parcel was booked, but declined —the agents saying, it could be paid at the place of delivery. The same defence was set up as in this case, that the defendants were carriers only on their own line, and that, having forwarded the parcel, after it left their line, they were discharged from liability. The defendants were held liable. Lord Abinger, after stating the practical difficulty attending the doctrine of the *612 defence, if the owner was obliged to follow the various parties, and find out the precise place of the loss, and sue the particular carrier on the line where the loss happens, says:—“ Besides, the carriage money being in this case one undivided sum, rather supports the inference, that, although these carriers carry only a certain distance with their own vehicles, they make subordinate contracts with the other carriers, and are partners inter se as to the carriage money; a fact of which the owner of the goods could know nothing, as he only pays the one entire sum at the end of the journey, which they afterwards divide as they please.”
This is certainly a very reasonable inference, and one which may well be drawn in this case. Here the defendant undertook, for a specified price, to forward the goods in question from New York to Fairport. The criticism of the defendant on the word “ forward,” as used in the contract, is not just. It applies to the whole distance, as well to those portions of the route where other parties were owners of the vessels, as to that portion where he employed his own means of transportation. He was to forward the goods from New York to Fairport, not from Buffalo, where he now says was the termination of his own immediate route. The word, as used by him, can only mean, that he was to carry or transport the goods, and whether in his own vessels, or in those of others, was perhaps immaterial to the plaintiff, provided on those parts of the journey where steam was to be used, they were carried in steam vessels. Besides, there is a fixed sum which covers the whole charge, and it would be absurd to suppose that the defendant was to receive the whole sum for merely forwarding, that is placing the goods on the vessels of some other party, to be carried to their place of destination.
The jury have found that those goods were marked to go by steam. They reached Buffalo in the defendant’s line of boats, and were forwarded by him, not by steam, but in a sailing vessel, and were lost. In Ackley v. Kellogg, (8 Cowen, 223,) Justice Sutherland says, “ the jury were properly instructed by the judge, that the cause turned upon the question whether the defendants by their contract with the plaintiffs were to for *613 ward the goods by the first canal boat that should sail after their arrival at Troy, or whether they were specially directed to send them only in Eddy’s line of boats. If the latter were the instructions given them, then the plaintiffs were entitled to recover. But if the directions to forward them were general, then the action must fail.” So in this case, the proper question for the jury was whether the goods were to be forwarded by steam.
It is certainly very questionable whether the defendant would not be liable, even upon the very limited construction sought to be given to the contract by him; that is, that beyond Buffalo, he was merely a forwarder. He did not forward the goods by steam. This case is clearly distinguishable from that of St. John v. Van Santvoord, (6 Hill, 151.) There was- no special undertaking in that case; no price, no contract. The goods were put on board the defendant’s barge in New York, directed to a place on the Erie canal, and were lost on the canal. The defendants in that case were carriers on the Hudson river only, and proved that they forwarded the goods from Albany in the usual and customary manner. The case in our books most analogous to the present is perhaps that of Fairchild v. Slocum, (19 Wend. 329.) There the defendants held themselves out as carriers, and the court say it is of no moment whether they use their own vessels, or employ the vessels of others to carry for them on some part, or even all of the route; that it is enough that they received the goods on an undertaking to deliver them at their place of destination. (And see Weed v. S. & S. R.R. Co. 19 Wend. 535.)
It was urged on the argument, that the plaintiff should have claimed under a special count in his declaration, setting up the specific contract with the defendant. We think such a count was unnecessary, and that the plaintiff is entitled to recover against the defendant generally as a common carrier, introducing the contract to show the agreement in the case as to the terms. But as the whole merits of the case seem to have been submitted and determined, and we are satisfied fully that the plaintiff ought to recover, he may, if he is so advised, amend his declaration by inserting such special count, and without costs.
A new trial is denied, with costs to be taxed.