CALDWELL (McGOWAN v.). See Case No. 8,806.

CALDWELL (MECKLIN v.). See Cases Nos. 9,387 and 9,388.

CALDWELL (ONEALE v.). See Case No. 10,515.

CALDWELL (PAINE v.). See Case No. 10,674.

---

## Case No. 2,303.

### CALDWELL v. SOUTHERN EXP. CO.

[1 Flip. 85;[1] 3 Cent. Law J. 416.]

Circuit Court, W. D. Tennessee. May Term, 1876.

CARRIER—NEGLIGENCE—DAMAGES—HOW COMPUTED.

1. The carrier is liable if he negligently expose property to capture by a public enemy, in consequence of which it is captured and destroyed.

2. A package of confederate notes was delivered to defendant at Jackson, Tennessee, by plaintiff, then living within confederate territory. The money was to be carried to New Orleans, but before it reached that city, in the usual course of business, New Orleans was taken by the federal troops. After a reasonable delay, the package was returned to Jackson for redelivery to plaintiff, but before this could be done that town was taken and destroyed by United States troops. *Held*, that the value of the package at the close of the war was the proper measure of damages. It was then demand was made, and interest should be allowed from that time.

At law. Action of assumpsit [by Robert D. Caldwell against the Southern Express Company] to recover value of a package of

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission.]

confederate money and Tennessee bank notes delivered to defendant at Jackson, Tennessee, April, 1862. This was consigned to parties in New Orleans. Plaintiff was a resident of that part of Tennessee which was under confederate rule at the time of the delivery. The defendant received the package April 23, 1862, but before it reached New Orleans that city was captured by the federal troops. After a delay of a few [about six][2] weeks, it was brought back to Jackson, where it was soon after captured in the occupation of the town by federal troops. The communication with plaintiff's residence had already been cut off by reason of that army being between Jackson and his residence in Henry county before the package reached Jackson on its return. [Plaintiff demurred to a plea interposed by defendant, and the circuit court sustained the demurrer, and gave judgment against defendant (case unreported). From this judgment, defendant appealed to the supreme court, which reversed the circuit court judgment, and remanded the cause for further proceedings in conformity with its opinion (see Southern Exp. Co. v. Caldwell, 21 Wall. (88 U. S.) 264), and the following proceedings were had:] The case was tried before a jury. There was some proof offered to show that confederate money and Tennessee bank notes were worth 75 cents on the dollar when the package was returned; at the end of the war, they were of no value. It was insisted that the express company was negligent, and some proof was submitted on that point; it not having sent away or withdrawn the money on the approach of the federal army. The jury were instructed that defendant was bound to take same care of plaintiff's property as of its own, and if the loss was occasioned by the act of defendant as well as by that of the Union army, defendant was liable, and that the measure of damages was the value of the notes at the time of loss, with interest from that time. Motion for new trial for error in charge.

L. D. McKisick, for plaintiff.
Robert Hutchinson, for defendant.

BROWN, District Judge. I see no error in the first charge. The rule is well settled that when a loss is attributable to the concurrent negligence of a carrier and an act of God, the defendant is liable. To exonerate the carrier, the loss must be due alone to the act of God or the public enemy, and the ingredient of negligence invalidates the defense of overwhelming force.

The doctrine is illustrated in the case of Davis v. Garrett, 6 Bing. 716. Lime was shipped on defendant's barge to be carried from Medway to London; the master deviated unnecessarily from the usual course, and during the deviation a tempest wet the lime, which took fire and was destroyed. Held, that as the loss actually happened while the wrongful act was in operation and force, the defendant could not set up, as an answer to the action, a bare possibility of a loss, if his wrongful act had never been done.

In the case of Williams v. Grant, 1 Conn. 487, salt was delivered at Providence, for carriage to New York. On the way down Providence river the vessel struck a rock and bilged. Evidence being introduced to show that the vessel when she struck was out of her usual course, that the master was unacquainted with the river and employed no pilot though it was usual to do so, the court held these facts should have been submitted to the jury. If the carrier unnecessarily exposed the property to such accident by any culpable act or omission of his own, he is not excusable. See, also, Merritt v. Earle, 29 N. Y. 115.

So in the case of Crosby v. Fitch, 12 Conn. 410. A carrier on a trip from New York to Norwich deviated by going outside of Long Island and during the deviation 52 bales of cotton were thrown overboard in a storm. The defense was that the Sound was closed with ice, and that there was a custom in such cases to take the outside route. The court left the proof of custom with the jury, and instructed that the defendant was guilty of negligence and liable, unless the custom was shown to their satisfaction. See, also, Hand v. Baynes, 4 Whart. 204; Wilcox v. Parmelee, 3 Sandf. 610; Merrick v. Webster, 3 Mich. 268; Powers v. Davenport, 7 Blackf. 497; Michaels v. New York Cent. R. Co., 30 N. Y. 564; Campbell v. Morse, 1 Harp. 468; Parker v. James, 4 Camp. 112.

The rule is different where the negligence of the carrier has ceased to be operative before the loss occurs. In such case the carrier is not chargeable with the loss. I had occasion to examine the authorities upon this point, in the arguments of Daniels v. Ballentine, 23 Ohio St. 532, cited by defendant, and to distinguish that case from those above cited in the fact that in Daniels v. Ballentine the loss occurred after the negligence had ceased to be operative. See, also, Ingledew v. Northern R. Co., 7 Gray, 86; Denny v. New York Cent. R. Co., 13 Gray, 481; Morrison v. Davis, 20 Pa. St. 171; Memphis & C. R. Co. v. Reeves, 10 Wall. [77 U. S.] 176; Needham v. San Francisco, etc., R. Co., 37 Cal. 409. It seems to me in this case, that although the defendant had ceased to become responsible as carrier for the package in question, it must be held to the liability of a bailee; that it was bound to take reasonable care that it did not fall into the hands of the enemy, and when the Union army had advanced so far southward that the capture of Jackson had become imminent, that it was its duty to remove this package, as it did its other property, and in default of so doing the jury were authorized

to find the loss was occasioned by its negligence.   · ·

The request embodied in the second charge was handed to the court, as the cause was about being submitted to the jury, and no opportunity was given for an examination of the important question involved. The charge was made in much doubt of the law, feeling that an error in plaintiff's favor could be more easily rectified than if made in favor of the defendant. My impressions at that time have been strongly confirmed by a careful examination of the authorities. I have arrived at a conclusion, not from an examination of the technical question whether in this form of action a demand was necessary before the commencement of the suit, but upon the ground that plaintiff's loss was occasioned, not by the default of the defendant, but by the war then existing, and by the operation of the non-intercourse act. By section 5, of the act of July 13, 1861 [12 Stat. 257], it is provided that "whenever the president * * * shall have called forth the militia to suppress combinations against the laws of the United States * * * and the insurgents shall have failed to disperse * * * it may and shall be lawful for the president, by proclamation, to declare that the inhabitants of such state, or any section or part thereof, where such insurrection exists, are in a state of insurrection against the United States; and thereupon all commercial intercourse by and between the same and the citizens thereof and the citizens of the rest of the United States shall cease and be unlawful so long as such condition or hostilities shall continue, and all goods and chattels, wares and merchandise coming from said state or section into the other parts of the United States * * * shall, together with vessel or vehicle conveying the same * * * be forfeited to the United States."

Pursuant to this section, on the 16th of August, 1861, the president issued a proclamation declaring that the inhabitants of the state of Tennessee "are in a state of insurrection against the United States," declaring all commercial intercourse between them and citizens of the other states unlawful, "and that all goods and chattels, wares and merchandise coming from any of said states into other parts of the United States will be forfeited."

This act and proclamation merely reiterated and applied to the civil war then existing the laws and usages of war between independent states, recognized by all civilized nations, and enunciated in England in the case of The Hoop, 1 C. Rob. Adm. 196, and recognized in this country before the rebellion by a long and uniform list of authorities. See The Rapid [Case No. 11,576]; Id., 8 Cranch [12 U. S.] 155; The Diana [Case No. 3,876]; The Coosa [Id. 3,113]; The Lord Wellington [Id. 8,508]; The Joseph [Id. 7,533]; Id., 8 Cranch [12 U. S.] 451; Baker v. Montgomery, 18 How. [59 U. S.] 110. The application of

these doctrines to the late civil war, the right to institute a blockade and to treat the citizens of the insurgent states as public enemies ever since the non-intercourse act, is recognized in the Prize Cases, 2 Black, [67 U. S.] 635.

Instances of the application of this doctrine are numerous, though a distinction is taken between contracts made during the war, which are absolutely void, and those made before the war, which are only suspended during the continuance of hostilities. Jackson Ins. Co. v. Stewart [Case No. 7,152]. The carriage of passengers to an enemy's port is illegal. The Rose in Bloom, 1 Dod. 57. Trading under an enemy's license is illegal. The Julia [Case No. 7,575]; Id., 8 Cranch [12 U. S.] 181; The Alexander, Id. 159. So, also, is the withdrawal of goods purchased before the war. Amory v. McGregor, 15 Johns. 24. In 1 Pars. Shipp. 329, it is said that "if a war be declared by the country to which a ship belongs, against one to which it was about to carry a cargo, this war makes all commercial intercourse illegal, and thereby annuls all obligation of carrying that cargo. Or if the proper authority of the same country lays an embargo, or passes an act of non-intercourse, or of special prohibition which extends to that ship and cargo, here the contract becomes illegal." (Citing a large number of authorities.)

But war annuls such a contract, while an embargo or prohibition may only suspend it. In the case of Jackson Ins. Co. v. Stewart [supra], it was held that the statutes of limitation were suspended during the Rebellion, as to matters in controversy between citizens of the opposing belligerents; also that on a recovery after the close of the war for a debt due before its commencement, no interest should be allowed for the period covered by the war. The rule that statutes of limitation are suspended is also supported by Wall v. Robson, 2 Nott & McC. 498; Moses v. Jones, Id. 259; Nicks v. Martindale, Harp. 138; Ogden v. Blackledge, 2 Cranch [6 U. S.] 276.

The rule that interest is not allowed pending the war, has been modified by the supreme court in cases where the creditor had an agent within the hostile territory during the war, with power to collect and receive moneys. In the case of Mrs. Alexander's Cotton, 2 Wall. [69 U. S.] 404, it was held by the supreme court that all the people of any district that was in insurrection against the United States, in the southern rebellion, were to be regarded as enemies, and that the court could not inquire into the personal character or loyalty of individual inhabitants of enemies' territory. It was observed: "We must be governed by the principle of public law, so often announced from this bench as applicable alike to civil and international wars, that all the people in each city or district in insurrection against the United States must be regarded as enemies,

until by the action of the legislature and the executive, or otherwise, that relation is thoroughly and permanently changed."

The leading authorities upon the subject of commercial intercourse are reviewed in the case of Griswold v. Waddington, 16 Johns. 438, and in the more recent case of Kershaw v. Kelsey, 100 Mass. 561. See, also, as to suspension by embargo, Ford v. Cotesworth, 3 Marit. Law Cas. 190, 468. In actions against carriers, the measure of damages is the value of the goods at the place of delivery, at the time they should have been delivered. Ang. Carr. § 482, note 2, and cases there cited.

Now, in this case, the original contract to carry to New Orleans was terminated, or at least suspended, during the war, by the capture of the city. It then became the duty of the company to return the property to the consignor, and it was not claimed that it had not made reasonable efforts to do so by sending the package to Jackson. By this time, however, a return of the package to the plaintiff had become not only impossible but illegal. The company then became a bailee of the property, responsible only for the use of ordinary care. At the close of the war it was its duty to return it to the plaintiff on demand. All that the plaintiff can call upon the defendant to do is to reimburse him for the damages sustained by the neglect of the defendant. For the loss of interest during the war, and for the depreciation of the currency, the defendant is not liable, for if it had done its duty and retained the package, the same loss would have occurred; in other words, the loss of interest and the depreciation was occasioned, not by the act of defendant, but by the war. I think the jury should have been charged that the defendant was liable for the value of the package at the time when the demand was made, with interest from that date.

For this error the verdict and judgment must be set aside, and a new trial granted.