[No. 9,249.  Department One.—January 10, 1885.]

AUGUST SCHROEDER et al., Appellants, v. SCHWEI-
ZER LLOYD TRANSPORT VERSICHERUNG'S GE-
SELLSCHAFT, Respondent.

Marine Insurance—Implied Warranty—Deviation—Discharge of In-
surer.—A policy of marine insurance implies a warranty that the vessel
shall not deviate from the voyage declared in the policy.  Any voluntary
deviation is a change of the risk, and a departure from the contract, the
legal effect of which is to discharge the insurers from liability for any loss
happening to the thing insured subsequently to the unauthorized devia-
tion.

Common Carriers—Bill of Lading—Transhipment—Consent of Con-
signor.—A provision in a bill of lading reserving the right to the carrier
to tranship at an intermediate port, is not binding on the consignor, unless
he expressed his assent thereto by signing the bill of lading.

Marine Insurance—Transhipment—Deviation—Bill of Lading.—The
defendant insured certain wheat for the plaintiffs on the steamer Colo-
rado, for a voyage from San Francisco, by way of Yokohama, to Hong Kong,
and thence by the usual connections to Batavia.  It was the usual practice
to carry cargoes to Hong Kong without transhipment at Yokohama, or con-
necting for that purpose with any other vessel at the last named port.  At
Yokohama, the wheat in question was transhipped to other vessels, and
carried to Hong Kong where it was stored in a warehouse to await connec-
tions for Batavia.  Held, that the transhipment at Yokohama was a devia-
tion from the policy, and released the insurer from liability for the subse-
quent loss, although the bill of lading, the form of which was well known
to the defendant, contained a provision authorizing a transhipment at Yo-
kohama, no evidence being offered that such transhipment ·had ever before
been made by the carrier.

APPEAL from a judgment of the Superior Court of the city
and county of San Francisco, and from an order refusing a new
trial.

The facts are stated in the opinion of the court.

*Sidney V. Smith & Son*, for Appellants.

*Andros & Page*, for Respondent.

The liability of the defendant can be affected by the bill of
lading only as it operates as a contract, the stipulations of which
it has, in some mode, adopted and made a part of its contract
of insurance.   The provision in such bill of lading, attempting
to reserve to the carrier the right to tranship at an intermediate
port, was not binding on the consignor, unless he expressed his
assent thereto by signing the bill of lading.  (Civil Code, §

2176; *Goodrich* v. *Thompson*, 44 N. Y. 324; *Goddard* v. *Mallory*, 52 Barb. 87; *The Maggie Hammond*, 9 Wall. 458; *Trott* v. *Wood*, 1 Gall. 442; *Shipton* v. *Thornton*, 1 P. & D. 216; 9 Ad. & E. 314; *Wilcox* v. *Parmelee*, 3 Sandf. 610; Emerigon on Ins. 359; Lee's Law of Ship. and Ins. 412.)

McKEE, J.—This is an action on a marine policy of insurance, to recover damages for an absolute loss of 3951 sacks of wheat, shipped by the plaintiffs from San Francisco to Batavia.

By the terms of the policy, which was issued on the 12th of August, 1874, the defendant insured in the sum of $16,000, for and on account of whom it might concern, 4551 sacks of wheat, laden under deck on board the Pacific Mail Steamship Company's steamer Colorado, then about to start for a voyage from San Francisco, by way of the port of Yokohama, to the port of Hongkong; and thence by the usual " connections " to Batavia.

The wheat was insured for the voyage, against "perils of the sea, fire, pirates, assailing thieves, jettisons, barratry of the master or mariners, unless the insured be owner or part owner of the vessel, and all other losses and misfortunes that shall come to the hurt, damage, or detriment of the said property or interest to which insurers are liable by the rules and customs of insurance in San Francisco, embezzlement and illicit trade excepted in all cases."

On the voyages of the company's steamships between San Francisco and Hongkong, with cargo laden for Hongkong or Batavia, it was the usual practice, or course of business, for the company's steamer, on which such cargo was laden at San Francisco, to carry the same to Hongkong without transhipping at Yokohama, or connecting for that purpose with any other vessel or vessels at the last-named port; that usage was well known to the defendant when it issued the policy of insurance, and it charged a lower rate of premium on the policy, because of its knowledge of the fact that there was to be no transhipment of the wheat at Yokohama.

With the wheat thus insured on board, the Colorado proceeded on her voyage from San Francisco to Hongkong, and *in transitu* reached in safety the port of Yokohama; but on mak-

ing that port the master received instructions from the company not to proceed to Hongkong, but to return with the Colorado to San Francisco. He, accordingly, without the knowledge or consent of the underwriters, or of the consignors, caused the wheat to be transhipped from the Colorado to two steamers belonging to the company, one of which was known as the Sierra Nevada, and the other as the Costa Rica, and returned with the Colorado from Yokohama to San Francisco. Six hundred sacks were transhipped on the Sierra Nevada, and 3951 sacks on the Costa Rica; the 600 sacks were safely carried by the Sierra Nevada and connecting steamers at Hongkong to Batavia, and the 3951 sacks were carried by the Costa Rica to Hongkong, where the agents and servants of the company received them, and according to the established usage of the company, which was known to the defendant, stored them in a warehouse on the harbor front of Hongkong for reshipment, at the first opportunity, by connecting steamers to Batavia.

But while the wheat was thus warehoused, awaiting transportation to Batavia, the harbor of Hongkong was swept by a typhoon, which forced the waters of the harbor upon the land with such violence that they broke in the roof and windows of the warehouse and drowned the wheat, so that, when the water subsided, it immediately began to sprout and become swollen and heated, and in that condition it was impossible to reship it for transportation to Batavia.

. As the law of these facts, we held, on a former appeal, (60 Cal. 467) that the underwriters were discharged from liability for the loss of the wheat, because of the unauthorized deviation from the voyage which had been insured, and of the unauthorized transhipment of the wheat by the carrier at Yokohama. Accordingly, we reversed the judgment, which had been entered for the plaintiff, but without ordering judgment to be entered for the defendant; because, as the judgment had been in favor of the plaintiff, he could not avail himself of an objection which he made in the court below, to the fact which was found by the court, that the Colorado, according to the regular course of business pursued by her owners, was bound to perform her voyage to Hongkong, where " connections were to be made for Batavia "; therefore we remanded the cause for a new trial. A

retrial has been had ; and the case comes before us on appeal by the plaintiff, from a judgment in favor of the defendant, upon a like finding of facts as in the former appeal.

The facts being the same, the former decision must be regarded as the law of the case. Besides, the exposition of the law contained in the decision is undoubtedly correct. One of the implied warranties of a marine policy of insurance is, that the vessel shall not deviate from the voyage declared in the policy. The voyage must be performed in the usual manner, and not voluntarily waived by the assured, or those who represent him. Any voluntary deviation is a change of the risk ; it forms a departure from the contract, and an attempt to substitute another ; and the legal effect of it is to discharge the insurer from liability for any loss happening to the things insured subsequently to the unauthorized deviation. (§ 2697, C. C.) The reason of this is, the voluntary substitution of another voyage for that which has been insured. " The discharge of the underwriters from their liabilities in such cases," says the Supreme Court of the United States, "depends not upon any supposed increase of risk, but wholly on the departure of the insured from the contract of insurance." (*Maryland Ins. Co.* v. *Le Roy*, 7 Cranch, 30.)

But the shipper in such cases is not without remedy for his loss. The remedy, however, is against the carrier of the goods, and not the insurer. By the breach of his implied warranty against deviation from the voyage, the owner of the ship becomes liable to the owner of the goods in case of loss. (*Crosby* v. *Fitch*, 12 Conn. 410.) So in *Goddard* v. *Mallory*, 52 Barb. 87, it was determined that "neither agents nor the owners of a vessel can send goods by a vessel other than that named in the bill of lading, without assuming the whole risk of loss or damage to the goods on such other vessel." And in *The Maggie Hammond*, 9 Wall. 458, the court says : "As agent of the owners, the master is bound to carry the goods to their place of destination in his own ship, unless he is prevented from so doing by the act of God, the public enemy, or by some act of the shipper, or from some one of the perils expressly excepted in the contract of shipment." (*Trott* v. *Wood*, 1 Gall. 442 ; *Shipton* v. *Thornton*, 1 P. & D. 216, 231 ; S. C., 9 Ad. & E. 314, 332 ; *Wilcox*

v. *Parmelee*, 3 Sandf. 610; Emerigon on Ins. 339; Lee's Law of Ship. and Ins. 412.)

But on the retrial, after the defendant had proved that the invariable practice and usage of the company's steamers, bound from San Francisco to Hongkong with freight for Batavia, was to perform their voyages by way of Yokohama to Hongkong, there to discharge such freight, and store it to await " connections " for Batavia, the plaintiff offered in rebuttal the bill of lading issued by the company to the consignor; and in connection with it proposed to prove by witnesses that bills of lading of like form had always been adopted by the steamship company, and that form was well known to all underwriters in San Francisco, and was a matter of notoriety and established usage; and that, by the usage of the business community in San Francisco, such bills of lading tacitly formed part of the contracts of marine insurance. Against the exception of the plaintiff, the court sustained the objections to the offers and excluded the evidence; and that constitutes the principal assignment of error on the present appeal.

We think the bill of lading did not tend to rebut the existence of the invariable practice and usage, as to the voyages of the company's steamers, proved by defendant. On the contrary, it tended to prove that the carrier contracted to transport the wheat on board the Colorado for the entire voyage from San Francisco to Hongkong, and thence with connections to Batavia. The obligation arising from the contract was therefore to perform the voyage as laid down in the bill of lading; and in that respect, the contract of affreightment coincided with the contract of insurance—both contracts covering the same voyage. It is true, the bill of lading also contained the following clauses, viz: " With leave to tranship the wheat to any other of said company's steamers * * * unto the port of Yokohama * * * thence to be transported by steamer or steamers of the Pacific Mail Steamship Company (with like exceptions, privileges and exemptions) unto the port of Hongkong; and there, in like apparent good order and condition, to be delivered at vessel's tackles unto the agent of the Pacific Mail Steamship Company at Hongkong, to be forwarded by him, per steamer, to Messrs. Busing, Schroeder & Co., Batavia, or his or their assigns." * *

But these clauses only tended to prove that the company claimed, or attempted to reserve, the privilege of departing from the usual route of their steamers bound from San Francisco to Hongkong, by way of Yokohama, and of transhipping at Yokohama instead of at Hongkong, from the steamer on which they were laden, the goods bound for Batavia. Such a claim, however, although expressed in the bill of lading and known to the consignor, was not binding upon him, unless he expressed his assent to it by his signature to the bill of lading. Section 2176 of the Civil Code declares: " A * * * consignor, * * * accepting a * * * bill of lading, or written contract for carriage, with a knowledge of its terms, assents to the rate of hire, the time, place, and manner of delivery therein stated * * * and to any limitation of the liability of the carrier in case of loss or injury ; but his assent to any other modification of the carrier's obligation in such instrument can be manifested only by his signature to the same." But the bill of lading offered in evidence was not signed by the consignor ; therefore, it did not tend to prove assent on his part to any deviation from the voyage upon which he had obtained the policy of insurance ; nor did it tend to prove a modification of the obligation arising from the contracts of affreightment or insurance for the regular and customary voyage covered by the bill of lading and the policy of insurance ; consequently, the clauses in the bill of lading did not affect the rights of the consignor, nor of his insurers, who were with him interested in the carriage of the wheat.

Besides, there was no proof, nor any offer to prove, that the privilege thus claimed, or attempted to be reserved, by the company, in the bills of lading which it issued had ever been exercised, except in the single instance in which the loss of the wheat had occurred. The parties to the policy of insurance did not, therefore, contract with reference to it ; nor did it amount to such a usage of business or trade as impliedly entered into the contract of insurance ; and as it was inconsistent with the contract, it was inadmissible in evidence. " Usage should not be regarded at all, unless it be of such a character as may be supposed to influence parties to a contract; and none can be ordinarily presumed to do this, but such as is public and contin-

ued.   Therefore, it is not sufficient to prove a few instances, not amounting to general practice, as an excuse of what otherwise would be a deviation." (*Crosby* v. *Fitch, supra.*)

There is no prejudicial error in the record.

Judgment and order affirmed.

McKINSTRY, J., and ROSS, J., concurred.